Douglass, J.
This is an action brought in the court of common pleas to set off and assign to William A. Moore an estate by the curtesy. The facts were set out in the petition, showing tbe status of the plaintiff: his marriage, conveyance of the property, the birth of a child and an estate in his wife. The answer denies that he is so entitled. The cause came on to be. heard to the court, and the court found the facts and law separately, dismissing the petition and denying to the plaintiff any such estate as claimed by him. To reverse this decree and finding, error is prosecuted here.
In an agreed statement, we have: That Alice V. Moore, formerly Alice V. lies, was one of four children of Alexander and Martha lies;'that on the 25th of September, 1876, she intermarried with the plaintiff, W. A. Moore, and died March 10, 1888, leaving plaintiff, her husband, and one child, Grace, the issue. Alice V. Moore, in 1874, joined her brothers and sisters in a conveyance by quit-claim to their mother of certain tracts aggregating 178 acres for her dower in all the property; and this deed was put on record in March, 1874, duly recorded, and the lands came by descent from the father, Alexander lies, to the said Martha lies, being his widow. Alexander lies died on the 24th of October, 1870, seized of the land mentioned in the petition, and leaving said Martha lies his widow, who received the lands mentioned in the petition, and which embraced lands other than the lands mentioned in the petition. Martha lies lived until December 24, 1894, when she died.
*593 It is conceded here that if the same rule obtained yn> 1876, when the cause of action at bar arose, as governed'1 in 1847, when the law was laid down respecting this very-matter in the 11 Ohio St., 367, or, in fact, if it is the’ same as it was any time prior to the enactment of the legislation of 1853, the case decided in 11 Ohio St., is decisive,- and counsel for plaintiff are reacy to capitulate. They regard that as decisive. We had an instructive argument here on the origin of curtesy, which was said to be involved in obscurity, and it was conceded that originally it^was a-rule or law of property that had its origin in the common; law; and the requisites of curtesy were the fact of^marriage, seizin, the birth of issue, and the death of the wife;that these were the pre-requisites of curtesy. This discussion was simply had to bring us down to the legislation of 1853 to show that at that I time, for the first, the pre-requisite of birth of issue was eliminated, leaving the others-remaining, and to show, in connnection with the legislation of 1866 and 1869, respecting the separate property of married women, how that affected the estate by curtesy;- and the claim was broadly made that that legislation, es-. pecially the legislation of 1853,absolutely abolished common law curtesy, and established a statutory curtesy. The 11 Ohio St., 367, having this question before it (not, however, the legislation to which I have just referred) laid down a> rule in the case,on all fours with this, asfollows: l!In order to give a right by the curtesy in the wife’s lands, it is not-sufficient that the wife was seized of an estate of inheritance therein during the coverture. She must also have had' a right to the present possession of the freehold. Hence, it is the settled rule of law, that a husband cannot be tenant by the curtesy of a remainder, expectant upon an estate for life,” — which is on all fours with this case — “unless the latter be determined during the coverture.” That latter part applies as well to this case; and, as I have before- *594 remarked, if that is the law — ?if these changes have not given us a different estate from the one at common law, then, as a matter of course, that is decisive. That is the whole contention.
An examination of the 39 Ohio St., 516, is instructive along this line, because in that case it is decided that:
‘'‘Curtesy ‘initiate’, as it existed at common law, is abolished in Ohio.” And then the court further say: “Curtesy is now regulated by statute,and is conferred only upon surviving husbands in the estates of which the wives die seized. It is not a vested estate until the death of the wife. ’’ There is a discussion here of the legislation of 1846, and, without reading that, I will simply hint as to how the legislation of 1866 and the legislation of 1869, in respect to the property of married women, affected this estate by the curtesy. What was originally the estate by the curtesy could be levied upon by execution, and could be sold by the husband. After the legislation of 1866,the object and purpose was, that it could not be reached, and would be safe from either the rapacity of creditors or the extravagance and improvidence of the husband. That was the legislation then, and it is not material until we come to the legislation .of 1853; because the legislation of 1824 and 1835, that is here spoken of, and the conclusion given in each instance, does not affect this case, for the reason that the case which was afterwards decided occurred prior to 1853. The court, however, in reciting the legislation of February 11, 1824, .•says:
“By section 15 it was declared, however, that nothing contained in the act should affect the right any person may have as tenant by the curtesy in any estate of inheritance, nor shall the right of dower claimed by any widow, in any estate of inheritance, be impaired in any wise whatever.
“This left the estate as it existed at common law; expect *595 ant upon marriage (as it is sometimes asserted), initiate upon the birth of a child capable of inheriting, consummate upon the death of the wife. This act was amended in 1885, and in the place of the section last cited, the following was enacted: ‘Section 15. Nothing in this act shall be so construed as to affect the right which any person may have to any estate by the curtesy or in dower, in any estate of inheritance of any deceased person.’ That is a portion of the act.
“While in the act of 1824 the common law estate of the curtesy was saved from the operation of the act, the curtesy which is saved in terms by the act of 1835, is curtesy in the estate of a deceased wife. * * *
“The act was again amended,’’ (and now we come to the real contention,) “in 1853, and section 17 contained the entire section 15 above quoted, and added thereto the clause: ‘and surviving husbands, whether there has been issue born during the coverture or not, shall be entitled to the estates of their deceased wives by the curtesy.’ ’’
Pruning out the third pre-requisite,or the pre-requisite of issue born, enlarged the estate. That is evident. Pruned out and narrowed in the sense that one of these pre-requisites was gone, nevertheless it would enlarge the estate in the husband. The court says:
“It was insisted that by this statute, which eliminated from an estate by the curtesy the pre-requisite, ‘birth of issue', an estate immediately vested in the husband, in all respects like unto curtesy initiate, by the mere facts of marriage and se’zin of the wife, but it was held that such was not the effect of the act. That the marital right of the husband to the possession and control of the real estate of his wife was unaffected by the act. That in strictness this right is not an estate by the curtesy, though sometimes called curtesy expectant, but a mere possession by him in the right of the wife; and that the statute operated only to enlarge the rights of ‘surviving husbands.
“It seems clear that by this legislation the rights of the *596 husband in the real estate of his wife were in these respects materially changed; i. e. the estate or interest which, by virtue of the marriage, was his, whether issue was born or not, and which entitled him to the possession and the rents and profits thereof during coverture, was preserved to him, but with his power to convey or incumber it without Mb wife’s joining with him, and the power of his creditors to seize it upon execution, destroyed. His curtesy in the estate of his deceased wife, i. e. curtesy consummate, was likewise saved to him, no longer dependent upon the birth of issue.”
That is the constructionjof the court as to what the legislation of 1853 did, and how far it broadened it.
In 11 Ohio St., 367, they say that it is not necessary that the wife be seized in deed,' — that is physically seized; but there must be a present right to immediate possession.
From what the court says here as to the effect of this legislation, we do not see that it goes any further than ' to limit the estate by curtesy so as to make it such a seizin as gives an immediate right to possession. We do not think it goes so far as to abolish curtesy proper, and to make it statutory curtesy. We do not think that there ever was statutory curtesy, as such, in Ohio; that curtesy initiate, as it existed at common law, was abolished in Ohio by the legislation of 1853; that the’estate by curtesy, or vested curtesy, which only became vested at the death of the wife, we think was regulated by statute and enlarged, but that it was common law curtesy down to 1887, when the estate at common law by the curtesy as such was abolished, and dower was put in its stead for the benefit of the husband. We subscribe to the view that the supreme court in all probability, if they had kept up with the pace of civilization, would have said fifty years ago that these old iron-clad trappings, that belonged to the feudal ages, ought to be wiped out of existence; that it should be statutory curtesy, and put upon some rational basis; that, as suggested in the *597 brief of counsel making this contention, it would be for the benefit of the surviving husband, and the issue born of the wife. But the 11 Ohio St. does not recognize any such doctrine. It hangs to the old idea; and the legislation along the line, while eliminating this one pre-requisite to which he have referred, and broadened the estate by the curtesy, does not seem to construe that legislation anywhere to mean anything else than that it simply regulates curtesy; and that the pre-requisites of marriage, seizin (which must be such seizin as gives a right to immediate possession) and death of the wife, all standing there, make it a modified common law estate by the curtesy, regulated in that degree by the statute. We think that the 11 Ohio St., is the law, and that it was so recognized by this decision in the 39 Ohio St., that the decisions in the 39 Ohio St. and the 11 Ohio St. can stand together. This judgment below, by reason of those facts, must be affirmed.
S. M. Hunter, and T. W. Phillips, on behalf of Plaintiff.
Kibler & Kibler, on behalf of Defendants.